MRS. AMY McCULLOH, WIDOW AND ADMINISTRATRIX OF THE ESTATE OF JOHN L. McCULLOH, DECEASED v. CATAWBA COLLEGE AND EMPLOYERS MUTUAL CASUALTY COMPANY.

(Filed 4 February, 1966.)

1. Master and Servant §§ 82, 93—

A letter from a medical expert containing an opinion as to the degree of disability suffered by claimant at a much lower percentage than testified to by another expert at the hearing, and which the employer could have brought out at the hearing, does not constitute a proper predicate for an order of the Superior Court remanding the case to the Industrial Commission for a rehearing for newly discovered evidence.

2. Master and Servant § 93—

Where the Industrial Commission's findings as to the degree of permanent disability suffered by claimant as a result of injury are supported by the testimony of an expert witness before the Commission, the findings are conclusive on appeal, and upon the death of the employee from other causes his personal representative is entitled to recover for the benefits accrued but not paid at the time of his death, G.S. 97-29, and his sole dependent is entitled to recover for the unpaid balance of the benefits for permanent disability. G.S. 97-37.

3. **Master and Servant § 94—**

An exception to the award of the Industrial Commission on the ground that it is contrary to law is a broadside exception and presents only whether the facts found by the Commission support the award.

APPEAL by plaintiff from *Gwyn, J.,* May 17, 1965 Civil Session of ROWAN.

Proceeding under the Workmen's Compensation Act. Plaintiff is the widow and sole dependent of the deceased employee. She is also his administratrix.

Prior to June 19, 1962, for an average weekly wage of $77.00, John L. McCulloh, 57-year-old electrician, had been employed by Catawba College for more than a year without missing any time due to illness or accident. On that day, while at work, a ladder "buckled up under him," and he fell across a chair. Although he was in great pain and unable to sleep, he continued to report for work and did not seek medical advice until June 22, 1962, when X rays revealed the fracture of three ribs on his left side. A rib support failed to lessen his pain or to permit him any sleep. On June 25, 1962, he was hospitalized with extremely high blood pressure and pneumonia. Additional X rays revealed that five additional ribs on the left had been fractured. In the hospital, he suffered a cerebral hemorrhage which affected his left arm and leg.

When McCulloh left the hospital, on July 9, 1962, his blood pressure had returned to normal. By August 23, 1962, his ribs had healed. His left arm remained weak, and he dragged his left leg. This condition never improved, nor was he ever able to return to work. On November 25, 1962, he was admitted to the Baptist Hospital at Winston-Salem for the removal of a cancerous kidney. He recovered satisfactorily from this operation and was discharged on December 5, 1962. Two days later, on December 7, 1962, following a second cerebral hemorrhage, he was readmitted. This stroke ultimately caused his death on January 6, 1963. All the doctors agreed that this second vascular accident did not result directly from his injury by accident on June 19, 1962.

By stipulation dated August 17, 1962 (about two weeks after the accident), McCulloh and defendants agreed, with the approval of the Commission, that defendants would pay him compensation at the rate of $35.00 per week for an undetermined period beginning June 20, 1962. A total of $840.00 was paid over a period of 24 weeks under this agreement. On June 17, 1963, plaintiff, as widow and administratrix of McCulloh, filed her claims for additional compensation. The case was heard on September 12, 1963, in Salisbury and on February 17, 1964, in Winston-Salem. At the September hearing,

Dr. David A. Rendleman, Jr., witness for plaintiff, testified that, in his opinion, McCulloh's pain and loss of sleep following his fall from the ladder caused an elevation of blood pressure which, in turn, caused the first cerebral hemorrhage with resulting "left-sided weakness." It was also Dr. Rendleman's opinion that, when McCulloh left the hospital on July 9th, he had suffered a 60% permanent loss of the use of his left arm and 100% loss of the use of his left leg. At the February hearing, Dr. W. H. Boyce, urologist, and Dr. Courtland H. Davis, neurologist, both of the staff of Bowman Gray School of Medicine, testified for defendant. It was Dr. Boyce's opinion that McCulloh's fall was more likely a result of preexisting central arteriosclerosis and vascular disease than a cause of it. Dr. Davis, who first saw McCulloh on November 21, 1962, was of the opinion that his arteriosclerosis was "of long standing" and that his fall on June 19th "was an aggravating feature" in the production of the thrombosis which caused his first vascular accident. Although Dr. Davis testified that he had observed McCulloh's "left-sided weakness," counsel did not ask him for his opinion as to the percentage of disability which McCulloh had suffered as a result of it. Because of the illness of defendants' regular counsel, different attorneys represented defendants at the first hearing. Between the two, however, the evidence taken at the September hearing had been transcribed.

The hearing commissioner filed his opinion on May 22, 1964. He found, in accordance with Dr. Rendleman's testimony, that McCulloh's first stroke, or vascular accident, resulted from his injury by accident on June 19, 1962; that the accident caused him to be disabled from then until January 6, 1963, the date of his death; and that the accident had caused him to sustain a 60% permanent loss of the use of his left arm and 100% loss of the use of his left leg. Based on these findings, he held plaintiff, as administratrix, entitled to compensation for McCulloh's temporary total disability from June 25, 1962, until his death on January 6, 1963, at the rate of $35.00 per week. From this award the sum of $840.00 previously paid was ordered deducted. He also held plaintiff, as widow, entitled to compensation at the rate of $35.00 per week for a period of 332 weeks beginning January 6, 1963, to cover the permanent loss of use of deceased's left arm and left leg, compensation, however, not to exceed $10,000.00. Her claim for death benefits was denied.

Defendants appealed to the Full Commission, contending that the findings were not supported by the evidence and were against its greater weight and that the conclusions of law were "erroneous." They moved "that it hear additional evidence on the question of the extent of decedent's disability." The motion was based upon a letter which Dr. Davis had written to defendants' counsel on August 19,

1964, in response to an inquiry as to the percentage of McCulloh's disability. Dr. Davis wrote: "Your letter of July 8, must be answered from records which are available to you. . . . I would estimate the impairment of function at about 25 percent of the left upper and left lower extremities." The Full Commission denied the motion for a further hearing and adopted the opinion and award of the hearing commissioner.

Defendants appealed to the Superior Court for that: (1) The Commission's "findings of fact as to permanent injury to the left arm and left leg of the claimant" are not supported by competent evidence; (2) its order is "contrary to law"; and (3) it erred in refusing "to allow defendants another hearing to produce additional medical testimony." When this appeal was heard in the Superior Court, plaintiff tendered judgment overruling each of defendants' exceptions and affirming the award of the Commission. Judge Gwyn declined to sign the tendered judgment. Instead, he treated the letter which Dr. Davis wrote counsel for defendants on August 19, 1964, as newly discovered evidence, set aside the order of the Full Commission, and remanded the cause "so that the defendants may introduce and have their additional or newly discovered evidence considered." From this order plaintiff appeals, assigning as error the refusal of the court to sign the tendered judgment and his order remanding the case for further hearing.

*Spry, Hamrick and Doughton and W. Scott Buck for plaintiff appellant.*

*Nelson Woodson and Max Busby for defendant appellees.*

SHARP, J. The first question to be considered is whether, under the facts presented, the judge had authority to grant defendants' motion for a rehearing on the grounds of newly discovered evidence.

After an appeal from an award of the Industrial Commission has been duly docketed in the Superior Court, the judge "has the power *in a proper case* to order a rehearing of the proceeding by the Industrial Commission on the ground of newly discovered evidence, and to that end to remand the proceeding to the Commission." *Byrd v. Lumber Co.,* 207 N.C. 253, 255, 176 S.E. 572, 573. (Italics ours.) *Accord, Moore v. Stone Co.,* 251 N.C. 69, 110 S.E. 2d 459. The burden is upon the applicant for such a rehearing to rebut the presumption that the award is correct and that there has been a lack of due diligence. He makes out "a proper case" for the granting of a new hearing upon the ground of newly discovered evidence only when it appears by affidavit:

McCulloh *v.* Catawba College.

"(1) That the witness will give the newly discovered evidence; (2) that it is probably true; (3) that it is competent, material, and relevant; (4) that due diligence has been used and the means employed, or that there has been no laches, in procuring the testimony at the trial; (5) that it is not merely cumulative; (6) that it does not tend only to contradict a former witness or to impeach or discredit him; (7) that it is of such a nature as to show that on another trial a different result will probably be reached and that the right will prevail." *Johnson v. R. R.*, 163 N.C. 431, 453, 79 S.E. 690, 699.

Here, defendants have failed to meet requirements (4), (6), and (7) above. Dr. Rendleman had given his opinion as to the percentage of McCulloh's disability at the September 1963 hearing. This evidence had been transcribed and was available to defendants' regular counsel when Dr. Davis testified at the hearing in Winston-Salem in February 1964. At that time, counsel had every opportunity to question him on all aspects of plaintiff's claim, but Dr. Davis was not asked for his opinion as to the degree of McCulloh's permanent disability. Furthermore, the opinion which Dr. Davis expressed in his letter, that McCulloh had only a 25% disability in his left extremities, merely contradicts Dr. Rendleman's opinion that the disability was 60% and 100% respectively. Finally, Dr. Davis' opinion is not evidence of such a nature as to show that on another hearing a different result would probably be reached so that "right will prevail." Since the Commission, the ultimate fact-finding body in this case, considered Dr. Davis' letter before it denied defendants' motion based upon it, there is scant reason to believe that a different result would probably be reached if a rehearing were granted. *Moore v. Stone Co., supra.*

Before an applicant who moves for a new trial upon the grounds of newly discovered evidence may invoke the discretionary power of the Superior Court, he must meet the seven requirements set out in *Johnson v. R. R., supra. Moore v. Stone Co., supra; Sanger v. Gattis*, 221 N.C. 203, 19 S.E. 2d 625; *Bullock v. Williams*, 213 N.C. 320, 195 S.E. 791; *Byrd v. Lumber Co., supra; Crane v. Carswell*, 204 N.C. 571, 169 S.E. 160. We conclude, therefore, that the Superior Court was without jurisdiction to allow defendants' motion and that the Commission's denial of it may not be held for error. The rules of the Industrial Commission (adopted under G.S. 97-80) "relative to the introduction of new evidence at a review by the Full Commission, are in accord with the decisions of this Court as to granting new trials for newly discovered evidence." *Tindall v. Furniture Co.*, 216 N.C. 306, 311, 4 S.E. 2d 894, 896. *Accord, Hall v.*

*Chevrolet Co.,* 263 N.C. 569, 139 S.E. 2d 857; *Butts v. Montague Bros.,* 208 N.C. 186, 179 S.E. 799.

The next question is: Did the judge err in refusing to sign the judgment tendered by plaintiff; The answer is Yes.

The Commission's findings of fact that the accident on June 19, 1962, caused deceased to sustain a 60% permanent loss of the use of his left arm and a 100% loss of the use of his left leg are indubitably supported by the testimony of Dr. Rendleman. Therefore, this finding of fact, the basis of defendants' first exception on their appeal from the Full Commission to the Superior Court, is binding upon the Superior Court and upon us. *Pardue v. Tire Co.,* 260 N.C. 413, 132 S.E. 2d 747. Defendants' second exception, "that said order has no basis in law and is contrary to law," is broadside. It presents only the question whether the facts found support the judgment. *Worsley v. Rendering Co.* and *Sugg v. Rendering Co.,* 239 N.C. 547, 80 S.E. 2d 467.

McCulloh's right, under G.S. 97-29, to compensation "for indeterminate weeks" as a result of his fall on June 19, 1962, had been conceded by defendants, who had paid compensation for 24 of the 29 weeks which elapsed between his fall and his death. Compensation which accrues under G.S. 97-29 during the lifetime of an injured worker but is unpaid at his death becomes an asset of his estate. *Inman v. Meares,* 247 N.C. 661, 101 S.E. 2d 692. The award of compensation at $35.00 per week to the plaintiff as administratrix of McCulloh during the period between his injury and his death, with credit for the amount paid to him during his lifetime, is supported both by unchallenged findings of fact and by the law.

Under G.S. 97-31(13), (15), and (19), McCulloh was entitled to compensation for a total of 332 weeks for the loss of use of his left arm and leg. G.S. 97-37 provides that when an employee who is entitled to compensation for an injury covered by G.S. 97-31 dies from any other cause than the injury for which he is entitled to compensation, payment of the unpaid balance of compensation shall be made first "to the surviving whole dependents." Plaintiff, as his widow and sole dependent, was entitled to the full compensation, since none had been paid decedent.

The judgment of the court below is vacated, and the cause is remanded for entry of judgment overruling defendants' exceptions and affirming the award of the Full Commission.

Error and remanded.